United States v. Hasbajrami United States v. Hasbajrami Suppression by the language of the statute, shall. Doesn't it say shall be suppressed in accordance with the requirements of law? So doesn't that refer to some body of law governing suppression? No, it refers to discovery. It refers to what happens after the court – and the House report, and we have it in our briefs, I think it's pages 20 and 21 – on the reply, I'm sorry, on the reply pages 20 and 21. The House report, because the government made much of the requirements of law clause, but that's about discovery once a court has found the surveillance unlawful. And they talk about civil discovery. They talk about how you have a taint hearing. It's designed to conform the statute with the principles in Alderman, which is what the court was working off of in terms – I'm sorry, what the Congress was working off of in terms of fashioning these sections. So if you look at the House report, and it's very clear, and we cite it, like I said, 20 and 21. Apart from the House report, the language of the statute is it shall be suppressed in accordance with the requirements of law, right? Yes, but that's about – Isn't that just naturally read to assume that there's some body of law that governs when you suppress evidence, and it's incorporating that by reference? Not when the legislative history is so completely crystal clear. So you're saying – well, I don't know about that. But you're saying the legislative history is crystal clear to say that the requirements of law is about what, when you share it with the other party? No. It's about – it's about – and of course – I'll read from the legislative history from the House report. In such circumstances, the judge is directed to suppress the evidence or otherwise grant the motion, quote, in accordance with the requirements of law. Existing case law requires the government, in the case of an illegal surveillance, to surrender to the defendant all the information illegally acquired in order for the defendant to make an intelligent motion on the question of taint. And then it goes into alderman. So that is what that clause is all about. Well, that's one thing that it's all about. But if you read it, and even when you read that legislative history, it talks about that the requirement is to suppress the evidence or otherwise grant the motion in accordance with the requirements of law. That phrase clearly modifies the whole thing. In fact, suppress the evidence is what it's directly with, and it's only much later that you get to or otherwise grant the motion. Now, I think the legislative history makes clear, what I think the grammar does anyway, that in accordance with requirements of law also applies to grant the motion for access. But I don't see how the language can't modify, suppress the evidence. Because the language is put there for the specific purpose at the legislature. Well, it's put there for recognition of alderman. But there's a lot of other law that was in the background of the exclusionary rule already by 1979. For example, you have Calandra, which says that the illegally obtained evidence can be used in a grand jury. You have Walder, going back to 1954, that the exclusionary rule does not prevent the use of illegally seized evidence to impeach the defendant. You're saying all of that is just overruled by all of that law about how the exclusionary rule operates as a Fourth Amendment matter is just revoked by Congress sub salientia. For FISA. Just for FISA. FISA is a special animal altogether in terms of how you have probable cause defined. It's not Fourth Amendment probable cause. It's a different kind of probable cause. So if Congress creates a right, Congress also can limit the remedy. And I suppose Congress could, as far as I can see. I mean, we haven't had this tested exactly. But presumably Congress could also modify the exclusionary rule, at least if one conceives of the exclusionary rule as being an administrative remedy rather than an aspect of the constitutional right. So Congress could narrow it or it could expand and say, no, we think in federal cases at least the exclusionary rule should be absolute and shouldn't have any of these exceptions in it. But I'm just saying it's a little hard to think that Congress is not importing, just as it's importing Alderman, it's importing the baggage that comes with suppression of evidence when it says suppress the evidence in accordance with the requirements of law. So the flip side of that is that Congress has amended FISA over and over again since then, never changed this to incorporate a good-faith exception. But also this Court is — But it's never changed it in the other direction either. No. But it's — but because we think it's clear. By the way, we're in uncharted territory. No one's ever gotten this far. Yes. So this section is very much — Mr. Montel, just to take a step back, because I had a threshold question. It's on page 34 of the government's brief. I understand you're at a disadvantage because you don't have a classified addendum. I just want to ask you a legal principle. If the evidence that the government has and the obtaining of the FISA orders did not — was not based upon the querying, isn't then it harmless? Would we even need to address this issue if they did not use it in connection with the investigation? That statement is completely contradicted by several factors, one of which, as this Court recognized — Well, first, just let me — Go ahead. Whether it's contradicted. As a matter of law, you would agree that if they did not use the querying in the case, they didn't use it to obtain the FISA order, and they didn't use it in the context of the investigation, that there would be no reason for us to address this issue. Well, there's a harmlessness factor that goes with the taint part. That's right. The inadvertent collection, we said in the first opinion, was harmless for precisely the same reason, right? Correct. All right. So now explain to me why that's contradicted. Because this Court said, and quoting from the government's initial letter notifying Mr. Hasbarami that — and I'll quote from it because this Court said in its opinion — it's at page 5 of our brief. It's at the — it's at 648 — I'm sorry. It's at — it's at 648. The government sent the letter to defense counsel. Now I'm quoting the Court. Stated that, quoting from the letter, based on a recent determination, back to the Court's opinion, it has concluded that the information obtained from FISA surveillance that the government had already disclosed, quoting again from the government's letter, was itself also derived from other collection pursuant to 702. Then the government admits it at page 12 and 14. But other evidence obtained from 702 is not the same thing as evidence derived from querying, is it? No. But the district court looked at all of this. We had a disadvantage. We can't argue facts with you because we're denied the facts. No, I get that you're at a disadvantage. But the district court — the district court said it wasn't harmless, said the querying was not harmless. That's a fact that the district court said. But, like, is this — do you agree with this general idea that if — that there is a 702 collection, and if there is information about a U.S. person that is — that is collected and also viewed upon a query incidentally or inadvertently without that is a search of a U.S. person, that's permissible? It's disputed whether a query with an identifier related to a U.S. person might not be — or a known U.S. person might not be permissible. But if it were true that the information that establishes probable cause for the warrant and the information collected pursuant to the warrant, if none of that was derived from a query with an identifier of a known U.S. person, then there wouldn't be a basis for suppressing the evidence. No, the Court has already found that. As the Court — as Judge Bianco stated, I think — or, I'm sorry, Judge Bianco — Judge Lynch just stated that in the earlier opinion when we talked about inadvertent — the inadvertent collection, that that was harmless. So that's a principle that this Court has already enunciated. But here the district court said it was harmless. And also just in its own brief, the government at page — the government has admitted in its brief that it — and I apologize, just trying to look for it. I'll just cite to it. The government's brief — the government's brief says that they used it for purposes of — it's a page — it's an hour prior, 1718. The government's brief at 12 and 14 says that they used it. It's part of that. And this case has always been — this case has always been litigated on the notion that this was a dispositive motion. This is not about harmlessness in the context of, well, it never mattered. We got a conditional plea, as the Court noted in its initial opinion here, that's because this is a dispositive motion. Can I ask sort of generally about the way the Fourth Amendment would operate? A lot of the Fourth Amendment cases where there's an exception to the warrant requirement, the Supreme Court kind of looks at the logic of the exception and whether some additional search is within the same logic, right? So like in Riley, it's a search incident to arrest, and the logic of it is to secure evidence, and the safety of officers effectuating the arrest. And so that lets you, like, make sure there isn't something on the person of the defendant or within reach of the defendant. But once you've secured the cell phone, there isn't really a strong reason to believe that the cell phone is a threat, is like, you know, something dangerous and so on. So you can stop and get a warrant. So for foreign intelligence collection, it's not really an exception exactly. It's just that the Fourth Amendment doesn't apply extraterritorially. But certainly if we're taking for granted that you can do a foreign intelligence collection and that might include information about a U.S. person that's incidental or inadvertently collected, doesn't that allow the government to look at all of that information? The Court has already said no. The Court has already said this Court has already said it's first opinion. That is a separate Fourth Amendment incident. Well, the Court said you should think about it as an event. Well, the Court offered three very conclusive pieces of analysis as to why it is, and it didn't send it back on an aspiration. It sent it back for this decision that the district court made in a very comprehensive opinion. It's the law of the case. Yeah. So it's the law of the case, right? It's an earlier appeal in the same case, which means we give it some weight, but we can reconsider earlier decisions in the same case, right? So let's put aside that opinion for a second, and let me just ask you about the logic of it. Wouldn't it be if the 702 collection is permissible, the government is allowed to look at that information?  No. So what's the legal reason? The three reasons that this Court articulated very carefully, very clearly in its first opinion, one, is collection is different from search. A subsequent search is different from initial collection. Second, this is an extraordinarily broad program that operates as if a query is permitted without any subsequent Fourth Amendment analysis, it operates as a dragnet, as a general warrant. That's this Court's terminology. And the third is, and the third is like Riley, this allows the government an extraordinarily intrusive window onto a volume of information about a person that clearly implicates the Fourth Amendment. Is it okay if I just ask a question about that? So in terms of the idea about a general warrant, I mean, it does operate as a general warrant of the foreign person, right? No, not the query. So the thing about the U.S. person is just whatever is picked up in the — That's not what this Court decided in the initial opinion, and that's the law of the case, that it would, if a query were permitted without a subsequent Fourth Amendment analysis, it would operate as a dragnet, as a general warrant. So just to make sense of that, can I ask this question? So in the case, in Ray, embassy bombings, we sort of said, extraterritorial searches are not subject to a warrant requirement, but they're subject to a requirement of reasonableness. So to the extent that we think that the queries are — I don't really know. We didn't really explain why, but maybe the idea is we don't want the government to abuse extraterritorial searches as a replacement for something they need a warrant for in domestic searches. And so that's why we said there's a reasonableness requirement. Maybe that's the way we should think about the subsequent queries. If, like, you have a permissible collection, but you're sort of using it as a way to circumvent something that you would have to get a warrant for domestically, so then the reasonableness is to keep it within the bounds of the authorization. That's not what the opinion says, and it's not what Judge Darcy Hall says. And the point is that on any level, it's not reasonable. Judge Darcy Hall did not say that there has to be a warrant. It's very difficult to think about what's reasonable. You are at a disadvantage, of course, in not knowing what the queries are. I'm not sure that we know what those queries were exactly. So it's hard to evaluate the reasonableness. Can I come back to what we've been sort of calling or dancing around as a harmless error thing? One of the things that has always troubled me about this case is the conditional plea aspect. It's relatively easy, if you have a trial and an argument is made that the district court erred in some kind of ruling at the suppression motion stage, to look at the trial and see whether that was tainted by whatever hypothetical error the defendant is pointing to. When you have a conditional plea, it seems to me a much trickier problem. And I've looked at this. The courts of appeals around the country are all over the lot in how they address that. The First Circuit has a sort of absolute rule. If there's any error found, then the defendant should get back his plea and be able to, you know, no matter how crazy he may seem as to what his odds are, it's up to him to decide whether to plead. And so if there's been any error at all that affected the inspection ruling, we're back to square one. Other courts of appeals have various ways of looking at it. I'm not sure we have a very clear rule on this at all as to, you know, under what circumstances that there was so much untainted evidence that whatever is actually potentially tainted is just not, doesn't matter. What should the standard be? What do you say the standard is for determining that kind of question? That's not about classified information. It's not about the Fourth Amendment. It's not about suppression issues. It's just how do we deal with these conditional pleas? I don't understand. I don't know that the Court has to decide this case with a categorical rule on the issue. This case has always been litigated as dispositive. This appeal context below is the first time the government's ever argued, oh, no, no. And, you know, it didn't have an impact. Here's the government's brief here. Following this page 12, following this determination that there was 702 interception, upon reviewing the evidence obtained or derived from the Title I or Title III FISA collection in Hasbarami's case, and determining that certain evidence was itself derived from the collection pursuant to 702, to Mr. Hasbarami was agreed. But you see, you see, the, the, okay, but I'm not interested in that discussion because I think you are conflating information derived from 702 with information derived from querying. For example, the inadvertent disclosures that we discussed in the first opinion are 702 information. But that didn't go into FISA because we know from the Court's opinion it was harmless. It didn't yield anything. Judge Holt, Darcy Holt, said this, these queries yielded intelligence information of value. She, she, we, you know, I can't give you an articulation of that because I don't think that's because it's, that's one of the problems with this whole bit of litigation. If it yielded intelligence information of value, if it wasn't used in connection with the obtaining of the FISA, it still would be harmless, right? I don't know that. It depends on how it was derived. Derived is a term no one's really defined in this context. But here, derived has meaning. And, and, and, and the collection itself, even if it's, I'm not trying to conflate. I'm just using your language. I understand the Court's point because it's, it's, but how are we supposed to confront that? Judge Holt did confront that. She made that decision. And the Court, this Court has complained about it. She complained about it. The government hasn't been complete in its disclosures. That should make a difference in how you view this issue. All right. Let's see if I missed something. And, and if, if I may just, just talk about good faith for a second about something that's not in our brief, but just wanted to point it out in terms of focusing on 2011 as opposed to the entire history of this program. This Court, in its opinion at 657, said originally the minimization procedures precluded analysis from searching terms associated with a United States person. So it wasn't reasonable at that time under those standards. And the rest of it's in our brief. Thank you. Thank you. Mr. Toomey. That wasn't corrected, by the way, until September, which the Court noted in its opinion in a footnote was after the arrest. So it could not be used as a, as a barometer of reasonableness. Thank you, Your Honor. All right. Thank you. All right. Mr. Toomey, you have a whopping two minutes. Good morning, Your Honors. May it please the Court. Patrick Toomey on behalf of AMICI, ACLU, and EFF. We're here to address the Fourth Amendment search issues should the Court decide to reach those questions. As the Court recognized in its prior opinion, this surveillance has profound implications for Fourth Amendment rights. The government vacuums up billions of communications based on the justification that its targets are foreigners. But then it allows FBI agents to search through the pool of amassed data, for the private communications of individual Americans, bypassing bedrock Fourth Amendment rights. That's what agents did in this case dozens of times over many months. The government spends much of its brief relitigating issues this Court already decided. The Court already decided that lawful collection targeting foreigners does not allow the government to do whatever it wants with Americans' protected communications. The Court already decided that queries are a separate Fourth Amendment event, and the Court already decided that queries are not a de minimis intrusion on Americans' privacy. Even if it's a separate Fourth Amendment event, and this is the part of the district court opinion that I really struggle to understand, the foreign intelligence exception could apply so that you don't need a warrant. The district court, in fact, concluded that it applies, right, to the query. That was part of the analysis. But then she separately looked at queries and said, but that was the exigent query. That was essentially the analysis. But if, in fact, the exception applies, we're not under, we don't look under exigent. We're under special needs. And special needs, you look at it at a programmatic level. You don't necessarily look at whether each individual query was exigent or not, right? That's not what the FISA Court of Review did in writing directives. That's not how you do it, right? So isn't that a mistake? If, in fact, the exception applies, to then say, but each query has to be exigent? First of all, this Court has never accepted or adopted the foreign intelligence exception. Only one court in that one appellate court, the FISA Court of Review, has accepted that exception since FISA was enacted. And even the FISA Court of Review's test is far narrower than the version the government advances here. No court, no court of appeals has accepted the idea that merely because the government claims a kind of generic foreign intelligence interest, that allows it to bypass the warrant requirement. Even though... The idea would be that getting a warrant on each individual query would break down as a practical matter. It would harm national security to do that. That could be the conclusion, right? Well, first I want to just put, add one more point on the foreign intelligence exception. The version of that exception that even the FISA Court of Review has accepted involves a determination that the person, target of the surveillance, is a foreign agent or an agent of a foreign, or a foreign power. And there's, there was no determination by the Attorney General or by a court in this instance that would satisfy that. So when you say that, does that have to be a foreign sovereign government or a So under FISA's definitions, a foreign terrorist organization would also qualify. But you would agree that if the exception applies, that using the exigent circumstances analysis would be incorrect? Well, I don't think the district court conflated the two. One of the factors under the, even the FISA Court of Review's test relates to the need for stealth, secrecy, and speed. Right. And the court was looking at those factors and it was... But on a programmatic level, right? On a programmatic level, that's the whole concept of special needs. Like, when you have a checkpoint where border, you know, special needs for searches, you don't, if you find that it's met because it's a special need, you then don't say, but in that situation, you could have gotten a warrant. You didn't need to rely on that. That's not how it works. Well, I think foreign intelligence is actually a very broad and elastic category, and it has never been the case since the Supreme Court's decision in is a basis for determining that the warrant requirement is impractical. If that were true, then the FISA regime itself would be superfluous. Instead, what Congress did in response to the Keith ruling was to establish the special court that makes determinations based on probable cause that someone is an agent of a foreign power. And so the court has recognized some flexibility in how the Fourth Amendment's probable cause requirements apply in the foreign intelligence context, but it has not been a license to bypass the warrant requirement. What I was saying earlier is sort of the way we think about some of these cases is about whether the logic of whatever allowed the government to do a kind of warrantless search in the first place extends to the next date that they want to search. Like, the logic of the search incidents arrest exception doesn't extend to the cell phone. So here, taking for granted that a 702 collection is permissible and it could include inadvertent or incidental collection of information about a U.S. person, doesn't that authorization allow the government to look at the information that it's collecting? Right? So then isn't it sort of odd to say that the subsequent queries are a separate search when the logic of the original collection would allow them to view all those documents? No, I don't think that's quite right. And it's because, like you said, what matters is the legal justification for the exception. And the legal justification in the case of the Section 702 surveillance is the foreign target's lack of Fourth Amendment rights. And so when the government changes its focus to focus – I want to emphasize, when the government gets permission to conduct 702 surveillance, the assurance that it provides, it is not targeting a known individual U.S. person. That's the reverse targeting prohibition. But what it's doing, as soon as it turns around and conducts a U.S. person, is changing its focus and specifically seeking – Right, but what it's doing is it's looking at something about the U.S. person that it collected pursuant to its investigation of a foreign person or a foreign topic, programmatic interest, or something like that. Right? And so if the information about the U.S. person is incidental, it's not a violation of the collection if the government has seen it, right? Well, if the government has seen it, but I think that is one fact that's really important here, because there are billions of communications being collected. Yeah, so that's kind of the weird thing. So this idea about the query, like, isn't it just kind of technological happenstance that the way – what happens is they collect all of the communications, put it in a database, but the way that they analyze it is they call up documents by query. Like, it doesn't actually have to be organized that way. Like, if you had somebody who's like a very talented speed reader that might just read all the documents, you might use an AI or something to summarize it and present to you something. So isn't it kind of weird to think that the Fourth Amendment kicks in because of the way we happen to organize the information? I don't think that's anomalous here where there are billions of communications, and I think this is a very important factual point. Most of these communications are not reviewed prior to any query because there's too many. And I think the court recognized this in its prior opinion. The way that communications are typically retrieved for an agent to review is through a query. I want to say one more thing about – So if they didn't use the queries, right, if they fed all the documents into the database and they asked, like, an AI model to say, look for evidence of criminal activity and summarize for me all of the relevant information that's in this information, would that be a separate search? Would that require a warrant? How would we think about that? It's not a query about a U.S. person, right? I think there are many interesting questions about how the government could conduct queries or analyze this information that the court does not need to reach here, where it's clear that the target, because it's using the U.S. person's identifier, has changed to have a U.S. person. But I'm trying to evaluate the idea that there's, you know, the district court thinks that there's a warrant required to do the queries, and if the query, the database, is just like a transitory feature of, like, current technology, it seems sort of odd. So, like, I want to understand how this would play out. Like, so what do you think about that? So if you use an AI to summarize everything and present it to you, and so you didn't have to do a series of queries, would that mean that there isn't a subsequent search? I really do think it would depend on how the queries are structured, and I think the FISA court is likely already grappling with those types of issues. But certainly where they're using a U.S. person's name or email address, that's not the set of considerations. But I do want to just make one point, that the framework the court adopted in analyzing these searches is entirely consistent with how courts routinely analyze computer hard drive searches, email account searches, where the government possesses the entire drive and can conduct searches through that information, pursuant to the original warrant and the probable cause showing. But if the government wants to look through that same data that it already has access to for information that's outside the original warrant and outside the original warrant. But that's if the original warrant doesn't authorize a search of the hard drive. So that's right. That's what I was saying about whether the logic that allows the collection allows you to look at the other thing. And I was suggesting, well, but if the 702 collection allows you to look at information collected by a U.S. person that's incidental or inadvertent, then it's as if there is an original warrant that allows you to look at it, right? No, it's not about what the government is looking for, but about its legal authority to be there, which set the terms of access. And the legal authority under Section 702 is based on the target's lack of foreign amendment rights, Fourth Amendment rights. Thank you. All right. We'll hear from the government. Mr. Minta. May it please the Court. Joseph Minta on behalf of the United States. This Court should affirm the denial of Hosbashrami's motion to suppress for three reasons. Most importantly, any querying of Hosbashrami's identifiers that led to the evidence in this case was reasonable under the Fourth Amendment. Separately, this Court can also affirm because any of the queries in this case were harmless and because the agents and analysts in this case acted in good faith reliance on the statute and the FISC's orders authorizing their activities. I'd like to pick up on the discussion regarding reasonableness before turning to the other two arguments. With respect to Fourth Amendment reasonableness, the queries that occurred of Hosbashrami were reasonable. The district court committed multiple errors in concluding otherwise. First, the court was wrong to conclude that queries presumptively required a warrant. Second, the court was wrong to conclude that the foreign intelligence exception did not apply. And finally, those errors set the court on the wrong path when it came to analyzing reasonableness. With respect to reasonableness, I think your question, Judge Manasci, gets to an important point, which is that in reterrish bombings, I think, sets an appropriate framework for evaluating this case. In that case as well, the court simply examined the reasonableness of the searches because they were covered by the Fourth Amendment but were outside the warrant requirement. And the same is true here. Nearly — and it's consistent with this Court's prior decision that these are Fourth Amendment events. But the Supreme Court has set out two different tests for determining whether something is in fact a Fourth Amendment search triggering the warrant requirement, and neither of those tests are met here. First, there was nothing amounting to a physical intrusion along the lines of a trespass. And second, there was no further invasion of the privacy — of a reasonable expectation of privacy. I get that, but can I just go back to — so in the terrorist bombings case, we don't really explain exactly why the — like, so the warrant requirement doesn't apply, but the reasonableness requirement applies. We don't really explain that. So what is the reason — like, how do we see that the warrant requirement doesn't apply, but the reasonableness requirement applies? What's the principle that's involved? So I think it would be different in this case than it was in — in terrorist bombings. And in terrorist bombings, the — the reason was the lack of jurisdiction over foreign searches and the inability of courts in the United States to issue those kinds of warrants. They would be useless paper in a foreign country. Here, it's because — But why isn't the conclusion then that the Fourth Amendment just doesn't apply? So, like, where is the reason — like, why does the Fourth Amendment apply the reasonableness? Oh, because you're saying it's just the practical difficulty of getting a warrant is what leads to it, but we want the Fourth Amendment to apply, and so then the only thing that we could apply is reasonableness? And I don't want to put words in Judge Lynch's mouth in interpreting his opinion for him, but I think that that was along the lines of what motivated the Court's conclusion in the prior appeal, that this is a Fourth Amendment event, but stopping short of calling it a Fourth Amendment search. And at that point, again, we — we believe that we can easily satisfy the reasonableness requirement of the Fourth Amendment. I — I — And how do you do that? What's the test for this? So I don't want to get too far into the classified record, but at a general level — You can say it as generally would have, yeah. I think this Court would start with the fact this was a predicated national security investigation. And when you're doing queries related to a predicated national security investigation in a collection of foreign intelligence information, that is a strong starting point for reasonableness. But if the Court wanted to go further, I think the Court could look at the restrictions that the Foreign Intelligence Surveillance Court has approved on queries at the programmatic level. Those are unclassified, and there's a three-prong test that have to be met. First, the queries have to be for an authorized purpose. Second, there needs to be specific facts that make it — that provide a belief that the query is likely to return information from that collection. And the third, the query needs to be reasonably tailored to not unnecessarily return other information. Yeah, there's a lot of problems with that, though, because the Privacy and Civil Liberties Oversight Board noted in 2014, which is after a lot of these requirements were in place, that still 98 percent of the queries came up empty. Which doesn't say a lot for the judgment of people who are supposed to be deciding whether it is likely to have any result, right? As opposed to just, we're interested in X guy, let's just see if there's anything in there. I apologize if I misspoke, Your Honor. That framework was not in place at the time of these queries, but I think that it could — I understand that. That's another sort of problem, because what we're talking about when we're addressing the first of the questions is not what people might have understood or what might have been good faith in 2011, or even what sort of regulations might be in place today, necessarily. We're talking at a more abstract level. What is the function of reasonableness and how do we get at it? And it's not that simple, it seems to me, is to say, well, we've got these regulations when it's not obvious what they really mean. What does it mean to say that it's likely to — And I don't think that this Court needs to grapple with those questions in evaluating the handful of queries that were conducted in this case, setting aside the classified record as to whether or not those queries actually did lead to the information that was included in the applications. There's still a small number of them, and I don't think the Court needs to address the reasonableness of queries that do come up empty or the reasonableness of queries that could hypothetically occur in other cases. I think when you apply that framework to the queries that are described in the classified record, the reasonableness of those queries is clear and this Court can affirm on that basis. Can we get to the harmless error thing? What do you think is the standard to be applied in assessing whether — if there is any error at all or any possible error that we could find in the suppression analysis of the district court? When we're dealing with a conditional plea — Well, let me just state one kind of possible rule without suggesting I endorse it. Mr. Hasbidrami indicated that he was particularly sensitive to whether there was some sort of 702 issue in the case. That's how we get here in the first place. I don't know why he is concerned about that. He may be concerned about that for the normal defendant's tactical reasons, that maybe if there was, then he'd have something he could suppress and he'd have an angle that would make it — get rid of enough evidence that would be worth going to trial. Or maybe he just wants to be a crusader about this kind of issue and he's got a hook to do it. I mean, if he just — suppose we had an affidavit from Mr. Hasbidrami saying, I don't care about whether I get convicted or not, especially now that I'm already sentenced and served my sentence. I just want to fight like hell to expose as much of this data as I can. And if that requires, you know, my withdrawing of the plea and going back to trial and maybe even theoretically risking some greater sentence, I'd do it. Does that make it impossible to do a harmless error analysis? So this is a point in which I'm actually in agreement with Mr. Drattel and the Court, I don't think, needs to decide that entire framework. I think for purposes of this case, all the Court would need to say is that to the extent that framework applies, it excludes harmless errors. That would both deprive him of the normal suppression motivation that you described, and it would also deprive him of a hook to advance these arguments going forward because it would essentially be a mood issue. But isn't it much harder? I mean, this gets to the question of what is fair to the defendant and what should be disclosed to defense counsel. How do you test all of that in a non-adversarial way? I think that Hasbidrami would still be entitled at the end of the day to the Court's ruling of X, Y, and Z documents must be suppressed, and that's the information he needs to inform that analysis. The district court correctly concluded at the end of the day there are no documents to be suppressed, and we would encourage the Court to affirm either on the good faith basis or the reasonableness analysis. But the end result is the same, and so I don't think that it changes the conditional plea analysis. Can I ask you the question that I was asking before about the technology? Am I right in thinking that, you know, currently the way the government analyzes this information is they collect it in a database and then subsequently query the database, but that is not the only way they might consume the information, and so you might have a different kind of way to consume information that doesn't involve queries, and so it's sort of odd and transitory to say that the querying requires a warrant or is a separate event. Is that right? Is it just kind of a happenstance, or is it the nature of this kind of collection that you're always going to do it by query? I struggle to answer that question partly because while FISA has now created a statutory definition of query, this Court's decision in the original appeal didn't describe what it meant by query, and those two may or may not be the same. Well, the statutory definition does talk about queries of unminimized information, right? So that does seem like that might be distinct. I mean, there are things that we could describe as a query of minimized information. Right, and so I don't want to— Even the statute has a definition of query, but it doesn't, like, dictate that you must use queries to analyze the information, so it doesn't seem to me that that prevents, you know, the point that I'm suggesting, which is maybe this is not the way it has to be analyzed. No, and I don't mean to fight you on that. I only want to sort of flag what I imagine Mr. Drotel may argue, which is that sort of the reverse, which is that any sort of analysis becomes—meets the definition of query that this Court intended to use in its original appeal. Oh, I see what you mean. Okay. Can I just ask you— You could explain what— So, you know, the question I asked was maybe you had, like, an amazing speed reader, or maybe you had an AI model that would analyze it and summarize it and whatever. Would that—could you do that? Do you understand that to be consistent with FISA? And it wouldn't be a query of a U.S. person—of a U.S. person identifier, right? So those are exactly the kinds of questions that the Foreign Intelligence Surveillance Court is evaluating when it's determining whether or not the government's procedures for doing any of those kinds of techniques comply with the Fourth Amendment, which it's statutorily mandated to do. I have a hard time with the government's position that just because you collected it previously, that it's not a separate Fourth Amendment search to go back and query it for whatever reason you might want to, that you keep making this distinction from Judge Lynch's opinion about an event versus a search. But as Mr. Trumey pointed out, the justification for the collection initially is that you're focusing on a non-U.S. person, right? That's the justification. You collect billions and billions of pieces of information as a result of that, and yet it's the government's position that we can go back and look through any of that information about any U.S. citizen, and it's not a separate — we don't do a Fourth Amendment analysis. Because we have it and we collected it, we can go back and query it for any reason we want. I understand you have a fallback position that it's reasonable, but I find that position to be pretty troubling. You're saying that you can go back and search any U.S. person from all those collections without any justification whatsoever, and it's not a Fourth Amendment search that must be reasonable? Well, I would push back on the premise a little bit, which is that the purpose driving this is the collection of foreign intelligence information. And I think in the course of this Court's opinion, the Court only needs to, along the lines of what Judge Minasci was suggesting, endorse queries that continue that purpose for foreign intelligence information. I agree that it becomes a much harder challenge for the government when those queries are for purposes separate from foreign intelligence analysis. But here, you're dealing with an investigation into somebody that was planning — So it's not a separate Fourth Amendment search. It doesn't matter what the purpose is. It's just the Fourth Amendment is not implicated. Yes. Do you understand? The government's position would allow it for any reason, not for just foreign intelligence. Do you understand that? And that's because at the point that collection has occurred, the reasonable expectation of privacy has been frustrated. As Judge Minasci pointed out — Well, I don't know. I mean, like, you could say — I mean, like, if we have a search incident to arrest, like, it's possible that the officers who are doing the search stray beyond the bounds of the exception. And so it might be that something that really isn't a separate search becomes sort of unjustified by the justification for why you were able to dispense with the warrant requirement in the first place. And so even though it's not a separate search, it's a continuation of the same search, it becomes unreasonable, right? So it's like maybe that's the way we might think about reasonableness, that there is a reason why the government can collect information without a warrant, but we don't want that to be a replacement for when they would normally have to get a warrant for domestic surveillance. And so if they sort of depart from the rationale for it, we might say that it becomes unreasonable. But it's sort of the same search materializing into an unreasonable search as opposed to, like, a separate. Does that make sense? Yes. The search — and the Supreme Court's cases, you're right, have held that when the search strays too far beyond its original scope and justification, it can become unreasonable. But for purposes of this case, that's not a challenge. And that would be a Fourth Amendment event, the moment at which it becomes unreasonable or something. Yeah. I mean, there's also a lot of issue about who and for what purpose, right? In other words, when we talk about the government and we talk about the fact that the intrusion has already happened, I'm not sure how much intrusion there is on my privacy from the fact that some conversation I had with a distant relative who lives in Ireland got swept up somehow because pretty much everything in the world does. But no one's ever looked at it, and no one has any occasion to look at it. And there are different government agencies, some of which might query, in quotes, that database for a purpose that is specifically related to foreign intelligence matters. But then that's different than a domestic law enforcement agent, for example, for purposes of just seeing whether I've committed any crimes. Just says, let me see what might be out there, right? That seems to be one of the distinctions that matters in this case as to when there is really an intrusion. Now, a lot of that might not bear on this case for a whole variety of reasons. I was going to say, the remand, I think, has answered those questions. But this is what Judge Bianco is addressing. Why is this troubling? It's troubling because the incidental collection of information about Americans that, let's put the argument, say, necessarily happens when you are engaged in this warrantless operation that is essentially directed at foreign intelligence gathering, can then be exploited without any kind of predication or any kind of reasonableness of the inquiry to non-probable cause, non-reasonable suspicion, law enforcement querying of that database for domestic purposes. That's, I think, what, without trying to put words into my own mouth, the prior opinion was concerned about in saying there's some kind of Fourth Amendment thing happening here. And I do want to point out the way that the Foreign Intelligence Surveillance Court has tackled that problem from a different angle without reaching that conclusion, which is by viewing the reasonableness of the program as a whole. And in that way, the scope of collection and the things that you can do with that collection on the back end reinforce each other. If one becomes broader, then the other may need to become narrower and vice versa, without declaring something to be a particular Fourth Amendment event at one stage of the program. But at the end of the day, I'm not asking the court to make that broad ruling that would endorse queries for any purpose without any process. But you were suggesting that if, in fact, the use of the query is meant that you are now sort of using this database as a replacement for something that otherwise would be a domestic, that that might be a point at which it becomes unreasonable. And can I ask you, I mean, you're going to say that this doesn't apply to this case, but I'm just interested in what your answer is. So the FISA requires minimization of information about a U.S. person unless it's evidence of a crime. Or necessary to understand foreign intelligence. Or necessary to understand, right. So if the crime that the U.S. person might have committed is bound up with whatever the foreign intelligence subject is, then maybe it's not outside the bounds of the justification to look into that. And I think that's exactly what happened here. So in the case of, right, I understand that's what you would say. But so in the case where you're looking at foreign intelligence information and, like, you just have evidence that some U.S. person committed a domestic crime sort of unrelated to the foreign intelligence topic, I guess you would say that's kind of like the plain view doctrine. And so, like, it would be, like, normally you would have to get a warrant for that. But if you discovered it in the course of whatever, it's plain view. But then can you do subsequent queries to get more information about that crime? Or then you're doing a domestic law enforcement search. So the queries have to be, there needs to be a warrant or something. I would say today as a statutory matter, evidence of a crime queries are generally prohibited. So that's not a hypothetical that could happen under the current regime, recognizing that that is currently being debated in Washington right now. But I do want to In terms of the logic of the Fourth Amendment, would that be outside the foreign intelligence purpose? Yes. If you accept our initial argument that these are events that only must be reasonable, then you would look at whether searching for these non-foreign intelligence crimes are reasonable. So what you see in the course of analyzing the foreign intelligence subject is evidence of a crime. That can be evidence of probable cause. But then to investigate the crime further, you might have to do domestic authorization. And I think it would be clearer if you go the foreign intelligence exception route, which I don't know would apply to those follow-on queries.  Thank you. All right, Mr. Tretel, you have three minutes in rebuttal. Thank you, Your Honor. The government mischaracterizes the essential elements of the district court's opinion. The district court said it didn't necessarily require a warrant, not only for every query, but here as well. The district court said even if a warrant was not required, the queries were not reasonable and went through exceptions and said the exceptions, even if they were argued as an exception to the warrant, would not justify these queries as reasonable. And with respect to the embassy bombings case, it's different. I actually was the appellant's counsel in that case. That did not involve FISA. It was a – so it's not – I think other than the grounding of reasonableness as the touchstone of Fourth Amendment analysis, even when a warrant is not required, is what is taken from that opinion. So in regards to the special needs, the Court did address special needs, and I don't think that Judge Darcy Hall conflated it. I think what she did was she said that there are these elements of special needs. One of them is exigency and found that that wasn't the case here when you have queries over a period of months. Also, just because it's a checkpoint doesn't mean you get to go beyond it, and that's the whole question of separating the two events. If it's a checkpoint, it's a checkpoint to determine sobriety, let's say. You don't get to drag the person out of the car, check the trunk, follow them home and go into their house. So there are limits even on the special needs doctrine. National security alone is not a rationale for obviating the protections of the Fourth Amendment or the application of the exception. With respect to the Department of Civil Liberties' oversight, where the PCLOB report in 2014 also said not only that they weren't successful, but that they were also not following the procedures. So this is all we can go on is what's public. You know, we're prevented from that. And with respect to the question of technology, this is a problem, because what the government does is create technologies to end run around the Fourth Amendment. And it's a decision you've probably seen that we have not, which is the most recent FISC opinion, which was followed by a 28-day submission by the government. We don't know what it was. We believe it was that opinion since it was issued the day before. The Court had a problem with filtering, which is this process where they don't even feel they don't even they can do things before they even query. So they're end running around the end run to begin with. So if we're going to delegate to AI and every day I read a decision, every day I read a decision by a court that says that AI is hallucinating, even the poor guy who used Wessel as AI.  Your Honor, go ahead. I'm sorry. Is it an end run? Doesn't it just show that querying is just a sort of contingent way that we organize information?  It's not itself a significant? No. No, it's significant for the reason that this Court said it was significant, the three bedrock reasons of the Fourth Amendment that this Court has already said it was an issue. And if we're going to delegate to AI, and like I said, the poor guy used Wessel and he still hallucinated, you know, the Wessel AI program hallucinated. If we're going to delegate to AI, the fundamental protections of the Fourth Amendment, that is a, just as a public policy matter, we should reject that altogether. This is a rogue program from the beginning. The FISC was issuing orders to sustain this program before there was even a congressional authorization. It has never passed a single audit, internal, PCOB, FISC opinions. Every single one has found significant abuse. It will not stop until a court suppresses evidence and makes it a consequence for this ongoing abuse, which is two decades now. And just to answer your question, Judge Lynch, even Clarence Earl Gideon was probably out of jail by the time Gideon was decided. All right. Thank you. Mr. Husbandrami, I assume, has been deported? Yes, he's deported. He's no longer in the United States. This is the lowest risk deterrence versus deterrence you could possibly imagine in terms of the good faith exception. It's all on one side, none on the other. Thank you. All right. Mr. Toomey, you have one minute. Thank you, Your Honors. Three quick points. First, no court of appeals has adopted a foreign intelligence exception as broad as the one the government urges here, which would not be limited to foreign agents or agents of foreign powers, not even the FISA Court of Review. I think it would be quite a significant shift for this Court to adopt that exception. Second, there is a way that the Court could reserve that question and yet go on to rule for Mr. Husbandrami very narrowly without breaking any new ground, and that's by setting aside the question of whether an exception applies and finding the surveillance unreasonable based on the same grounds that the FISA Court itself held in 2018 when it found FBI's querying procedures constitutionally unreasonable. It essentially held that they were unreasonable under the Fourth Amendment because there was not even an obligation for agents to write down the justification for these queries, and those same deficiencies affected the surveillance here in 2011. And third, I do want to emphasize that these queries are Fourth Amendment searches. They are a further intrusion on a reasonable expectation of privacy that individuals hold in their electronic communications, and that additional intrusion is what constitutes a search. Thank you, Your Honors. Thank you, everyone. It was our decision. Have a good day.